**The HEARST CORPORATION d/b/a The Houston Chronicle Publishing Company and Evan Moore, Petitioners,**

v.

**Jack SKEEN, Jr., David E. Dobbs, and Alicia Cashell, Respondents.**

No. 04–0414.

Supreme Court of Texas.

March 11, 2005.

---

Gregory S. Coleman, Weil Gotshal & Manges, LLP, Austin, William W. Ogden, Joel R. White, Ogden Gibson White Broocks & Longoria, LLP, Houston, Jonathan Donnellan, Office of General Counsel, New York, NY, for Petitioners.

Bruce L. Mulkey, The Mulkey Attorneys Group, P.A., Rogers, AR, Gary L. Richardson, Richardson, Stoops, Richardson & Ward, Tulsa, OK, Charles Kester, Law Office of Charles M. Kester, Fayetteville, AR, Beth Anne Harding Miller, Richardson, Stoops, Richardson & Ward, Athens, for Respondents.

Thomas J. Williams, Haynes & Boone, LLP, Fort Worth, for Amicus Curiae.

PER CURIAM.

In this interlocutory appeal we consider whether it was error to deny the media defendants' motion for summary judgment against the plaintiffs' libel claim. Because the plaintiffs, who were public figures, failed to raise a fact issue on actual malice, we conclude that the media defendants were entitled to summary judgment.

On June 11, 2000, The Hearst Corporation published "Justice Under Fire" in *The Houston Chronicle.* Written by Evan Moore, the article contained pointed criticisms of the Smith County criminal justice system and included three companion articles examining specific cases. With the subheading "'Win at all costs' is Smith County's rule, critics claim," the lead article reported that Smith County "is noted for its own brand of justice," which is "driven by aggressive prosecutors who achieve some of the state's longest sentences." The article stated, "Critics say Smith County's justice system is tainted and inequitable." It also declared that Smith County prosecutors "have been accused of serious infractions" including "suppressing evidence, encouraging perjury and practicing selective prosecution."

Claiming the article was false and malicious, three Smith County prosecutors named in the article, District Attorney Jack Skeen and two of his assistants, David Dobbs and Alicia Cashell, filed a defamation suit against Hearst and Moore. The trial court denied Hearst and Moore's motion for summary judgment, and on interlocutory appeal, the court of appeals affirmed the trial court's ruling. 130 S.W.3d 910. We have jurisdiction over the petition for review in this interlocutory appeal because the trial court denied the media defendants' motion for summary judgment in a defamation case. Tex. Gov't Code § 22.225(d); Tex. Civ. Prac. & Rem. Code § 51.014(a)(6).

■ To recover for defamation, the public-figure plaintiffs must prove that Hearst and Moore published a false[1] and

---

1. Proving falsity in a public-figure defamation case is the plaintiff's burden of proof; in such

defamatory statement with actual malice. *See Huckabee v. Time Warner Entm't Co. L.P.,* 19 S.W.3d 413, 420 (Tex.2000). Although the parties disputed whether the article was capable of a defamatory meaning before the court of appeals, the issue was not raised here. Moreover, we need not decide whether the article was actually false to resolve this appeal. The plaintiffs can prevail here only if there is some evidence that Hearst and Moore published the article with actual malice.

■ To establish actual malice, the plaintiffs must prove Hearst and Moore published the article with either knowledge of the falsity or reckless disregard for the truth. *See New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 162 (Tex.2004). Knowledge of falsity is a relatively clear standard, but reckless disregard is much less so. *Bentley v. Bunton,* 94 S.W.3d 561, 591 (Tex.2002). Reckless disregard is a subjective standard, requiring evidence that Hearst and Moore entertained serious doubts as to the truth of the article at the time it was published. *See id.*

■ A libel defendant is entitled to summary judgment under Texas law if it can negate actual malice as a matter of law. *Huckabee,* 19 S.W.3d at 420. Hearst and Moore supported their motion for summary judgment with numerous exhibits, including Moore's affidavit, which stated he believed the article was true and accurate based on his extensive research. Having negated actual malice, the burden shifted to the plaintiffs to raise a fact issue. *See id.* at 424.

■ The plaintiffs contend that Moore knew the article was false because the ten cases discussed in the article were a relatively insignificant sample from which to conclude that the Smith County D.A.'s of-fice routinely engaged in unethical practices to win convictions. At Moore's deposition, the plaintiffs' attorney pointed out that these ten cases amounted to only .04% of the total indictments handled during D.A. Skeen's service. Moore admitted that he had done no statistical analysis but had only focused on the problem cases he had discovered. The fact that Moore had not reviewed every indictment during D.A. Skeen's service or discussed a larger number of problem cases is not evidence that he knew the article contained false statements.

■ Arguing the article was published with reckless disregard for the truth, the plaintiffs claim Hearst and Moore purposefully avoided the truth, relied on dubious information from bias sources, deviated from professional standards of care, and were motivated to fabricate. *See Bentley,* 94 S.W.3d at 596.

■ "A failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is." *Bentley,* 94 S.W.3d at 596. We analyzed evidence of purposeful avoidance in *Bentley* when a talk show host was sued for libel after repeatedly accusing a judge of being corrupt. *Id.* at 601. Although the host claimed that his accusations were based on his investigations, there was a "complete absence of any evidence that a single soul . . . ever concurred in [the host's] accusations of misconduct against [the judge]. All those who could have shown [the host] that his charges were wrong [the host] deliberately ignored." *Id.* For example, the host made a false accusation that the judge had improperly delayed a criminal trial without even contacting any attorney involved in the case to inquire about the delay. *Id.*

a case, the defendant does not have the burden of proving substantial truth as an affirmative defense. *Bentley v. Bunton,* 94 S.W.3d 561, 586–87 (Tex.2002).

Similarly, in *Harte–Hanks Communications, Inc. v. Connaughton,* a newspaper deliberately avoided verifying false allegations it printed about a judicial candidate. 491 U.S. 657, 692, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). The candidate had persuaded a certain Stephens to give him a recorded statement concerning bribes that she had made to his opponent's employee. *Id.* at 668–69, 109 S.Ct. 2678. Stephens' sister, who was present for the recorded statement, told the newspaper that the candidate used "dirty tricks" to get Stephens' statement with the intent of blackmailing his incumbent opponent into resigning before the election. *Id.* at 670, 109 S.Ct. 2678. Before printing the sister's allegations, the newspaper failed to interview Stephens, the key witness, or listen to the tape provided of Stephens' recorded statement. *Id.* at 692, 109 S.Ct. 2678. By ignoring the two sources that could objectively verify the sister's allegations, the newspaper had purposefully avoided discovering facts that might show the falsity of the allegations. *Id.*

In contrast, we held in *Huckabee* that the purposeful avoidance theory did not apply because "no source could have easily proved or disproved the documentary's allegations." 19 S.W.3d at 428. When a documentary criticized a judge's order granting an allegedly abusive father custody of a child, the judge sued, arguing the filmmakers had purposefully avoided discovering the truth. *Id.* at 427. The filmmakers' extensive research, which involved interviewing several people on both sides of the story, including the judge, and reading transcripts of the case, precluded a finding of purposeful avoidance. *Id.* at 428. "Although the filmmakers did not interview [the father or his lawyers], they were not required to continue their research until they could find one more person who agreed with [the judge's] order." *Id.* (indicating failure to track down every

possible source is not purposeful avoidance).

Like the filmmakers' research in *Huckabee,* Moore's five months of research involved interviewing parties on both sides of the issue, including the plaintiffs, and reviewing the court records of the cases discussed in the article. Furthermore, no source existed that could have easily disproved the criticisms of the Smith County D.A.'s office included in the article. The evidence simply does not support a purposeful avoidance theory.

■ "An understandable misinterpretation of ambiguous facts does not show actual malice, but inherently improbable assertions and statements made on information that is obviously dubious may show actual malice." *Bentley,* 94 S.W.3d at 596. In *Harte–Hanks,* despite knowing the judicial candidate had turned the tape concerning bribery over to the police, the newspaper still published the improbable assertion that he intended to blackmail his opponent with the tape. 491 U.S. at 691, 109 S.Ct. 2678. Moreover, the sister's uncorroborated allegations were doubtful because every other witness the newspaper interviewed denied the sister's version of the events. *Id.* Additionally, the sister's hesitant demeanor and inaudible responses in her taped interview with the newspaper raised "obvious doubts about her veracity." *Id.* With the sister as the only source of the dubious allegations, the evidence showed the newspaper had recklessly disregarded the truth in publishing the article. *Id.* at 691–93, 109 S.Ct. 2678.

■ In the current case, Moore had many sources corroborating the criticisms of the Smith County D.A.'s office. Moore testified that he spoke to over twenty attorneys, who told him that the Smith County D.A.'s office: was too aggressive; was too closely aligned with law enforce-

ment; was overly influenced by prominence of the victim or accused; had sentences that were harsh or excessive as compared to other jurisdictions; and had suppressed evidence or encouraged false testimony to win convictions. Although most conditioned their responses on anonymity, several attorneys, including perhaps most significantly a former Smith County D.A., allowed their names to appear in the article. The criticisms were not inherently improbable because Moore had reviewed multiple statements in court-filed documents alleging prosecutorial misconduct. Such documents included: a Court of Criminal Appeals opinion [2] stating an assistant D.A. attempted to interview a defendant without his attorney's knowledge; a writ of habeas corpus petition alleging the Smith County D.A.'s office suppressed exculpatory evidence in the *Mims* case; a deposition in the *Smith* case of chief prosecutor Dobbs, in which he admitted confronting the plaintiff of the malicious prosecution case in a bar and asking "how much money would it take to make it go away"; and a motion for new trial in the *Bendy* case that included affidavits accusing the prosecutor, Cashell, of soliciting a key witness to perjure her testimony. Moore's article was based on many sources that corroborated the criticisms, which his research showed were not inherently improbable. Therefore, no fact issue exists as to whether Moore relied on obviously doubtful sources of information for his article.

■■■ "A lack of care or an injurious motive in making a statement is not alone proof of actual malice, but care and motive are factors to be considered." *Bentley*, 94 S.W.3d at 596. In the current case, the plaintiffs presented an expert who testified about the professional standard for investigative reporting and concluded that the

article was biased and failed to impartially give a balanced account of the information it discussed. Assuming this expert testimony should be considered, evidence that the article was written "from a particular point of view, even when [the article is] hard-hitting or sensationalistic, is no evidence of actual malice." *Huckabee*, 19 S.W.3d at 425.

■■■ To establish motivation for recklessly disregarding the truth, the plaintiffs presented evidence that Hearst and Moore ignored the plaintiffs' letter questioning the truth of the article because they received the letter two days before the article's publication deadline. This, however, is no evidence of actual malice. First, Hearst and Moore incorporated a portion of the letter into the article in the form of a quote by the plaintiffs. Second, "[t]he mere fact that a defamation defendant knows that a public figure has denied harmful allegations or offered an alternative explanation of events is not evidence that the defendant doubted the allegations." *Huckabee*, 19 S.W.3d at 427. Third, without more, mere evidence that a newspaper was motivated to meet a publication deadline is no evidence of actual malice. *See Harte–Hanks*, 491 U.S. at 667, 109 S.Ct. 2678 (discussing profit motives).

Viewing the evidence in its entirety, no fact issue is raised as to whether the article was published with actual malice. Accordingly, without hearing argument, we grant the petition for review, reverse the court of appeals' judgment, and render summary judgment in favor of Hearst and Moore. Tex.R.App. P. 59.1.

---

2. *Cook v. State,* 940 S.W.2d 623, 626 (Tex.     Crim.App.1996).