COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS




BELO CORP., THE DALLAS MORNING
NEWS, L.P., BELO INTERACTIVE,
INC., THE DALLAS MORNING NEWS
OF TEXAS, INC., ALFREDO
CORCHADO, and LAURENCE ILIFF,


 Appellants,


v.


PUBLICACIONES PASO DEL NORTE,
S.A. DE C.V.,


 Appellee. 

§


 


§


 


§


 


§





§



§



§



§

No. 08-06-00113-CV



Appeal from


 County Court at Law No. 6


of El Paso County, Texas


(TC # 2004-4750)




O P I N I O N



 This sprawling city is either a playground for murderous drug traffickers and serial
killers or a flawed border town maligned by muckraking journalists who have turned
the killings of some women by resentful macho men into a global cause celebre. 
Those opposite views belong to the men who publish the city's most influential
newspapers. 


Thus begins an article written by Alfredo Corchado and Laurence Ilifff and published in The Dallas
Morning News on July 4, 2004, bearing the headline: "Newspapers In Fight Over Juarez's 
Image" (the article). 

 Residents of the El Paso/Juarez border communities are keenly aware of the series of female
homicides in Juarez which began back in 1993. The deaths of more than 400 women have received
wide media attention throughout the United States and Mexico. The average age of the victim was
sixteen and roughly a third of them worked in the maquiladoras of Juarez. According to an article
by The Village Voice, more than one-third of the victims were raped before they were killed, and the
bodies bore signs of captivity and torture.

 The article in issue portrays how El Diario, published by Osvaldo Rodríguez Borunda, and
Norte de Ciudad Juárez, published by Oscar Cantú Murguia, view the killings and the effect on the
image of the city. Norte has theorized that the rich, the powerful, the government, organ traffickers,
or Satanists have perpetrated the murders, while El Diario takes the position that the murders are
domestic killings. (1) 

 The article also highlights the growth of El Diario to a daily circulation of 60,000, making
it the largest newspaper in Juarez. Meanwhile, Norte's circulation has dwindled from 30,000 to less
than 18,000. Cantú blames the decline on government officials whom he says have withheld
government advertising and threatened local vendors who sell his newspaper. Rodríguez disputes
the charges that he has soft-peddled his reporting in return for government advertising. The article
reports that the Juarez city government accounted for $400,000 of El Diario's advertising revenue
in 2003 while the Chihuahua state government spent $350,000. The piece concludes:

 Mr. Rodriguez said he's in no one's pocket. . . . He said government advertising
accounts for only a small fraction of his ad revenue. . . . But El Diario is full of
advertising, while Norte is not.


THE LAWSUIT



 Publicaciones Paso Del Norte, S.A. de C.V. (El Diario) filed suit against Belo Corp., The
Dallas Morning News, L.P., Belo Interactive, Inc., The Dallas Morning News of Texas, Inc., Alfredo
Corchado and Laurence Iliff, (collectively "Belo") alleging claims for defamation (2) and business
disparagement. (3) Belo unsuccessfully sought summary judgment on both traditional and no-evidence
grounds, the former asserting that Belo had negated actual malice, the latter contending there was
no evidence of actual malice. Belo brings this interlocutory appeal complaining that the trial court
erred in denying summary judgment relief. See Tex.Civ.Prac.&Rem.Code Ann. § 51.014 (a)(6)
(Vernon Supp. 2006). (4) Because we conclude El Diario has not raised a genuine issue of material
fact that Belo acted with actual malice, we reverse and render judgment in favor of Belo.

STANDARD OF REVIEW


 A libel defendant is entitled to a traditional summary judgment if it can negate actual malice
as a matter of law. Hearst Corp. v. Skeen, 159 S.W.3d 633, 637 (Tex. 2005). A no-evidence motion
for summary judgment is also a proper vehicle for alleging that a plaintiff has not raised a genuine
issue of material fact that the defendant acted with actual malice. A no-evidence summary judgment
is essentially a pretrial directed verdict and we apply the same legal sufficiency standard of review. 
 King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750 (Tex. 2003). The moving party must
specifically state the elements as to which there is no evidence. Gray v. Woodville Health Care
Center, 225 S.W.3d 613, 616 (Tex.App.--El Paso 2006, pet. denied); see Tex.R.Civ.P. 166a(I). The
burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact
regarding each element challenged. Gray, 225 S.W.3d at 616. The evidence is reviewed in the light
most favorable to the non-movant and we must disregard all contrary evidence and inferences. King
Ranch, 118 S.W.3d at 751. A genuine issue of material fact is raised if the non-movant produces
more than a scintilla of evidence regarding the challenged element. Id. at 751. Less than a scintilla
of evidence exists if the evidence is so weak as to create no more than a mere surmise or suspicion. 
When the evidence rises to a level that enables reasonable minds to differ in their conclusions then
more than a scintilla of evidence exists. Id.

ELEMENTS OF THE CLAIM


 El Diario concedes it is a public figure for purposes of defamation. To establish a claim for
defamation, it must demonstrate that: (1) Belo published a factual statement; (2) that was capable
of defamatory meaning; (3) concerning El Diario; (4) while acting with actual malice regarding the
truth of the statement. See WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998);
Provencio v. Paradigm Media, Inc., 44 S.W.3d 677, 680-81 (Tex.App.--El Paso 2001, no pet.).
Under Texas law, even if individual statements considered in isolation are literally true or non-defamatory, a publication can convey a false and defamatory meaning by omitting or juxtaposing
facts. See Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000). Whether a publication
is false and defamatory depends on a "reasonable person's perception" of the entire publication, not
merely individual statements. See id. at 115. A publication as a whole may be defamatory if the
publication creates a false impression. See id. at 117-18.

ACTUAL MALICE


 This case turns on the fourth element: Did Belo act with actual malice regarding the truth
of the statements? (5)
 The phrase "actual malice" in the context of defamation does not include ill will,
spite, or evil motive. Huckabee v. Time Warner Entertainment Company L.P., 19 S.W.3d 413, 420
(Tex. 2000). Instead, a public figure must prove that the defendant made the statement "with
knowledge that it was false or with reckless disregard of whether it was true or not." See id., citing
New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). 
Reckless disregard is also a term of art. Huckabee, 19 S.W.3d at 420. To establish reckless
disregard, a public figure must prove that the publisher "entertained serious doubts as to the truth
of his publication." Id., citing St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d
262 (1968). Perhaps the very best explanation appears in Bentley v. Bunton, 94 S.W.3d 561, 596
(Tex. 2002). Justice Hecht writes:

 To summarize, the actual malice standard requires that a defendant have,
subjectively, significant doubt about the truth of his statements at the time they are
made. To disprove actual malice, a defendant may certainly testify about his own
thinking and the reasons for his actions, and may be able to negate actual malice
conclusively. But his testimony that he believed what he said is not conclusive,
irrespective of all other evidence. The evidence must be viewed in its entirety. The
defendant's state of mind can--indeed, must usually--be proved by circumstantial
evidence. A lack of care or an injurious motive in making a statement is not alone
proof of actual malice, but care and motive are factors to be considered. An
understandable misinterpretation of ambiguous facts does not show actual malice, but
inherently improbable assertions and statements made on information that is
obviously dubious may show actual malice. A failure to investigate fully is not
evidence of actual malice; a purposeful avoidance of the truth is. Imagining that
something maybe true is not the same as belief. (Footnotes deleted).


Bentley, 94 S.W.3d at 596.

 This case differs from other libel suits in that the defamation arises not from false statements
articulated in the publication, but from the false impression that El Diario soft-peddled news
investigations regarding the Juarez murders in order to obtain advertising from the government. 
Where a defamation claim arises not from individual false statements, but rather from a defamatory
impression created by the publication as a whole, a public figure must present evidence that the
defendant knew or strongly suspected that the publication as a whole could present a false and
defamatory impression of events. See Turner, 38 S.W.3d at 120.

 The purpose of the actual malice standard is to protect innocent but erroneous speech on
public issues, while deterring "calculated falsehoods." See Turner, 38 S.W.3d at 120, citing
Garrison v. Louisiana, 379 U.S. 64, 75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). "Knowledge of
falsehood is a relatively clear standard; reckless disregard is much less so." Bentley, 94 S.W.3d at
591. Reckless disregard is a subjective standard that focuses on the conduct and state of mind of the
defendant. Id. Mere negligence is not enough. There must be evidence "that the defendant
actually had a 'high degree of awareness of . . . [the] probable falsity' of his statements." Id., citing
Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 668, 109 S.Ct. 2678, 105
L.Ed.2d 562 (1989). A public figure may rely on circumstantial evidence to prove a defendant's
state of mind. Bentley, 94 S.W.3d at 591.

 Belo offered the affidavits of the authors, Alfredo Corchado and Laurence Iliff, and The
News' foreign editor, Tim Connolly. Both Corchado and Iliff stated that at the time they published
the article, they believed the statements in the article were true, they did not believe the article
conveyed a false or misleading impression, and they wrote what they intended to be a truthful and
factually accurate article. Tim Connolly edited the piece and gave final approval prior to publication. 
In his affidavit, Connolly stated he had worked with both authors for a number of years and knew
them to be reliable and accurate journalists. Connolly believed the article accurately quoted or
paraphrased the persons or organizations identified. His reporters performed an accurate
investigation and he believed everything in the article was true. He had no awareness that any of the
article was probably false, and he had no doubts whether the article was factually accurate. Since
neither the authors nor the editor entertained any doubts as to the articles accuracy, Belo has
produced some evidence negating actual malice. See Freedom Newspapers of Texas v. Cantu, 168
S.W.3d 847, 853 (Tex. 2005)(affidavits from publisher and copy desk editor averring that neither
had knowledge of inaccuracies or any reason to doubt accuracy of articles was some evidence that
newspaper acted without malice and shifted burden to plaintiff to produce contrary evidence to avoid
summary judgment); Hearst, 159 S.W.3d at 637 (affidavit of author stating he believed the article
was true and accurate based on his extensive research negated actual malice and the burden shifted
to plaintiffs to raise fact issue). The burden now shifts to El Diario to raise a fact issue as to actual
malice. Id.

 In determining whether El Diario raised a fact issue, we must assume that all facts favorable
to El Diario are true and we will indulge all reasonable inferences in its favor. Huckabee, 19 S.W.3d
at 424. El Diario contends Belo acted with actual malice because the article contained glaring
omissions resulting in gross distortions, the article contained misleading paraphrasing and
misrepresentations about government advertising, and Belo had an injurious motive against
El Diario.

Glaring Omissions and Distortions


 El Diario alleges Belo acted with actual malice by grossly distorting the truth regarding
El Diario's perspective on Ciudad Juarez, El Diario's reporting, and El Diario's criticism of activist
groups. According to El Diario, the gross distortion itself constitutes some evidence of actual
malice. See Huckabee, 19 S.W.3d at 426.

 First, El Diario argues Belo grossly distorted the truth regarding its perspective on Juarez. 
It points to the opening paragraph of the article, which we have already quoted. Rodríguez claims
that he never said Juarez is a "flawed border town." He told Iliff in an interview that Juarez
authorities were negligent in investigating the murders, that drug trafficking and murder were serious
issues in Juarez, that Juarez has a high incidence of drug addiction, that life in Juarez has no value,
that a hit man can be hired for $5,000, and that Rodríguez's close friend was killed. Rodríguez
characterized Juarez as a "mean, murderous place" and not a "flawed border town." We perceive
this as a distinction without a difference. The article simply paraphrased the description rather than
using a direct quote. See Freedom, 168 S.W.3d at 854, citing Masson v. New Yorker Magazine, Inc.,
501 U.S. 496, 519-20, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991)(every alteration of a speaker's words
is not some evidence of actual malice). It did not grossly distort his viewpoint and does not
constitute actual malice. Id. at 855 (proof that a plaintiff did not make the exact remark, standing
alone, is not evidence of actual malice). In fact, Rodríguez testified that one of his many viewpoints
of Juarez was that it is a flawed border town maligned by muckraking journalists.

 Secondly, El Diario contends the article's depiction of its journalistic reporting was glaringly
deceptive. By mentioning only two of the paper's articles as examples of its reporting, Belo created
a false impression of its coverage. In May 2004, El Diario criticized the finances of activist groups
dedicated to the Juarez victims. Norte, meanwhile, published an expose of police corruption in
neighborhood drug houses. A few days later, federal commissioner Guadalupe Morfin Otero
released a report criticizing state authorities for jailing innocent people in connection with the
killings. El Diario ran a story about Morfin's report at the bottom of the page under the headline
"Commissioner Files Report and Announces Public Works" with a subhead reading, "Morfin
Accused of Election Law Violations." Norte's front page story declared, "Morfin Reveals
Impunity." El Diario contends Belo ignored El Diario's coverage exposing the jailing and torturing
of two innocent men and left out the fact that Rodríguez had voiced deep criticisms about the
government. It thus concludes that Belo acted with actual malice by selectively presenting examples
of its reporting.

 A public figure may recover for the omission of facts only by presenting evidence that the
publisher selected the material with actual malice. See Huckabee, 19 S.W.3d at 426. This requires
evidence that the defendant selected the material with the awareness that the omission could create
a substantially false impression. Id. The omission may be so glaring as to result in a gross distortion
of the story that by itself it constitutes evidence of actual malice. Id. In such cases, the omission
must be such that it changes the character of the story that "one could infer that the defendant knew,
or at least suspected, that the omission would convey a false impression." Id.

 Here, the article's focus was to highlight the differing approaches between El Diario and
Norte regarding the Juarez murders. El Diario introduced numerous articles, translations, and
summaries covering protests against the murders, the demand by Amnesty International for more
investigatory resources, and the promise by the special prosecutor to take action if she found
governmental negligence in the investigation. Although El Diario has written other articles on the
Juarez murders, it has not established that Belo's selection of two of articles and its omission of
others was purposefully done to create a false impression. The fact that Belo did not include an
analysis of every article does not establish that Belo acted with actual malice. See Turner, 38 S.W.3d
at 122 (libel law cannot require a news organization to air the interviews of everyone who might
speak on a public figure's behalf); Huckabee, 19 S.W.3d at 425 (evidence of producing a story from
a particular point of view, even when they are hard-hitting or sensationalistic, is no evidence of
actual malice). El Diario has not shown that Belo knew it was creating the false impression. 
Huckabee, 19 S.W.3d at 426 (although the documentary did not convey plaintiff's position as
strongly as it could have been, the law did not require it to do so).

 Next, El Diario contends Belo distorted the truth about one of its critics and invented the
other. The article stated:

 In May, El Diario ran a critical examination of the finances of activist groups
dedicated to the Juarez victims.


. . .



 Mr. Rodriguez's critics, including actress Jane Fonda and non-government
organizations such as Casa Amiga, say he soft-peddles suspected links between
politicians and drug traffickers and spends little investigative time on the women's
killings.


El Diario first faults Belo's reliance upon the criticism by Casa Amiga. El Diario published an
article on April 20, 2004, charging that the director of the organization sought donations to provide
aid to the victims' families but failed to do so. It also contends the statement that El Diario ran a
"critical examination of the finances of activist groups dedicated to the Juarez victims" was distorted
because the April 20 article showed Casa Amiga was not "dedicated" to the victims, but was
profiting instead. This is not evidence that the organization's views were false. And Belo's reliance
upon a biased source does not establish that it acted with actual malice. See Dolcefino v. Turner, 987
S.W.2d 100, 119 (Tex.App.--Houston [14th Dist.] 1998), aff'd, Turner v. KTRK Television, Inc., 38
S.W.3d 103 (Tex. 2000)(evidence that source was motivated by strong political bias did not amount
to evidence of actual malice).

 El Diario also claims Belo distorted Jane Fonda's comments. On Valentine's Day 2004,
activist groups rallied along the border, chanting "ni una mas" -- "Not one more." Thousands
gathered at the international bridge and marched down Lerdo Avenue in Juarez. Joining the
protest was Eve Ensler, author of the Vagina Monologues, whose international non-profit
organization, V-Day, co-sponsored the event with Amnesty International. Jane Fonda, Sally Field,
and Christine Lahti joined the protest and Fonda actively participated in a press conference. 
According to Corchado, Fonda criticized the media's coverage of the Juarez murders, asking why
it took international movie stars to show up before the news media covered the story. Although
Fonda did not expressly mention El Diario, Corchado interpreted her criticism of the local media
to include El Diario, which is the city's largest newspaper. At most, the reference to Fonda was an
error in judgment arising from Corchado's interpretation of her comments. Errors in judgment are
not evidence of actual malice. See Huckabee, 19 S.W.3d at 426 (HBO's failure to capture accurately
all the story's details suggests an error in judgment, which is no evidence of actual malice); Turner,
38 S.W.3d at 122 (discrepancy in segment's language may have been manipulated to have deceived
viewers, but there was no evidence that the defendant knew or strongly suspected that the segment
would mislead viewers and lack of clarity alone is not evidence of actual malice); Bentley, 94
S.W.3d at 594, citing Time Inc. v. Pape, 401 U.S. 279, 290, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971)
(interpretation that omitted the word "alleged," although reflecting a misconception, was not
evidence of actual malice); Freedom, 168 S.W.3d at 855 (an understandable misinterpretation of
ambiguous facts does not show actual malice). El Diario has failed to establish that the alleged
omissions and gross distortions constituted evidence that Belo acted with actual malice.

Misleading Paraphrase


 El Diario next objects to the article's statement that "Mr. Rodríguez said he's in no one's
pocket." It claims that Rodríguez never made the statement and that it was substantially different
from what he actually did say. (6) One of the early drafts of the article contained the following:

 Mr. Rodríguez said he does not need the government. 'They are important (income)
sources, but they are not determinate for the newspaper,' he said.


The final draft deleted the exact quotation and substituted the paraphrase, "Mr. Rodríguez said he's
in no one's pocket."

 Paraphrasing or deliberately altering the words of a plaintiff does not establish actual malice
unless some evidence is presented that the defendant misinterpreted the remarks on purpose or the
circumstances are such that only a reckless publisher would have made the mistake. See Freedom,
168 S.W.3d at 855. Belo admitted to paraphrasing Rodríguez's comments, but El Diario still has
not established Belo purposefully misinterpreted Rodríguez's remarks or that the error was such that
only a reckless publisher would have made the mistake. See id. at 857.

Injurious Motive


 Finally, El Diario contends that Belo had a financial motive to harm El Diario's credibility
with its readers. Belo, who had an interest in expanding into the Hispanic-newspaper market, had
failed to reach an agreement with El Diario regarding possible joint ventures along the Texas and
California borders with Mexico. Lennox Samuels is The Dallas Morning News Mexico City Bureau
Chief. He testified by deposition that The News had made inquiries about publishing a Spanish or
English newspaper in markets along the U.S./Mexico border. It spoke with several Mexican news
organizations, including El Diario, from the mid- to late-1990s into early 2000. These discussions
focused on Spanish-language papers in El Paso, Tijuana, and San Diego. In addition to the
possibility of a Spanish-language product along the border, The News also investigated other
possibilities, including information-sharing. The New York Times then published an article in 2003
profiling El Diario's plans to unilaterally expand its publishing into the United States to compete
with The El Paso Times, a newspaper that Rodríguez claimed gave "short shrift" to Juarez and the
Hispanic majority in El Paso. Entitled "Shaking Up Journalism In El Paso," the article cautioned
that Rodríguez's plans "threat[en] to touch off a newspaper war unlike any seen in the United States
for a long time." In March 2004, Belo entered into a joint agreement by which Norte gained the right
to re-publish articles from The News in Spanish. A second contract granted Norte the right to
republish The News' articles in English, beginning in April 2005. Belo claims this was a wire-service agreement and that Norte paid for the rights. The record reveals that Norte was also
negotiating with The El Paso Times, which was looking to Norte as a way to fend off El Diario. 
They entered into a distribution agreement in late 2004.

 In the spring of 2005, El Diario de El Paso, a Spanish-language newspaper, began
publication in El Paso. By that time, Belo was publishing La Prensa in Riverside, California; El D
in Coachella Valley, California, and Al Dia in Dallas. Belo contends that none of its Spanish
newspapers are located along the U.S./Mexico border, nor do they compete with El Diario in either
Juarez or El Paso. And because El Diario failed to present any evidence that Norte's compensation
to The News was tied to its circulation, Belo argues there was no evidence that at the time the article
was published, The News competed with El Diario.

 El Diario's arguments that Belo had an injurious motive to ruin its reputation are certainly
factors to be considered. Hearst, 159 S.W.3d at 639, citing Bentley, 94 S.W.3d at 596 (an injurious
motive is a factor to be considered in a determination of actual malice). But an injurious motive
alone is not sufficient to establish actual malice. Id. The fact that a defendant may publish
defamatory material to increase its own profits does not suffice to prove actual malice. Harte-Hankes Communications, Inc. v. Connaughton, 491 U.S. 657, 665, 109 S.Ct. 2678, 105 L.Ed.2d 562
(1989).

When Actual Malice Can Be Inferred


 Actual malice cannot be inferred from the fact a publication is not substantially true as
determined from the meaning a reasonable person would attribute to the article, nor can it be inferred
from the falsity of a statement alone. DR Partners d/b/a The Sherman Herald Democrat v. Floyd,
228 S.W.3d 493, 498 (Tex.App.--Texarkana 2007, pet. filed). But it may be inferred from the
relationship of the parties, the circumstances surrounding the publication, the terms of the
publication itself, and from the words or acts of the defendant before, at, or after the time of the
communication. Id. El Diario contends that actual malice can be inferred here because the record
shows the depth and breadth of the authors' knowledge of the paper's reporting, yet they selected
and mis-described two stories that distorted the truth. Belo counters that even if the article included
inaccurate characterizations and quotations, it amounts to no more than the "sort of inaccuracy that
is commonplace in the forum of robust debate . . . ." Id. at 500, citing Bose Corp. v. Consumers
Union, 466 U.S. 485, 513, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

 El Diario also directs us to the recent case of Texas Disposal Systems Landfill, Inc. v. Waste
Management Holdings, Inc., 219 S.W.3d 563 (Tex.App.--Austin 2007, pet. filed). There, the parties
competed for a contract to provide waste removal and landfill services to the City of San Antonio. 
After the city council authorized the contract with Texas Disposal, but before the contract was
finalized, the City of Austin sought bids from both companies. Waste Management then caused an
"Action Alert" to be circulated to a targeted audience of Austin officials which addressed San
Antonio's proposed contract with Texas Disposal. The memo warned of increased traffic and
environmental problems, and questioned the environmental integrity of the Texas Disposal landfill. 
Don Martin was the consultant hired by Waste Management to draft the memo. He testified that at
the time of publication, he didn't believe any of the statements to be false and that he didn't intend
to convey the message that Texas Disposal's landfill was illegal, environmentally unsound, or
lacking a leachate collection system. Yet he also testified that by saying the landfill was an
"exception" to the EPA rules, he intended to convey the message that the landfill was not in
compliance with federal regulations. He admitted that the purpose of the Action Alert was to prevent
San Antonio from signing the contract with Texas Disposal and that the "not in compliance"
language was specifically designed to achieve that purpose. This conflicting evidence was resolved
by the fact finder -- the jury -- which entered an affirmative finding of actual malice. The appellate
court found the evidence sufficient to support that finding. We do not disagree with either opinion. 
We do believe, however, that before actual malice can be inferred, there must be more than a scintilla
of evidence upon which to base the inference.

CONCLUSION


 After a thorough review of all of the evidence, and considering the defamatory impression
created by the publication as a whole, we conclude that there is less than a scintilla of evidence to
create a genuine issue of material fact concerning actual malice. In reaching this conclusion, we
draw heavily from Hearst, which we find most factually analogous. There, an article entitled,
Justice Under Fire was written by Evan Moore and published in The Houston Chronicle. It
criticized the Smith County criminal justice system which it claimed was "noted for its own brand
of justice" that was "driven by aggressive prosecutors who achieve some of the state's longest
sentences." Hearst, 159 S.W.3d at 636. The piece was accompanied by three companion articles
that examined specific cases.

 The district attorney and two of his assistants filed suit, contending that Moore knew the
article was false because the ten cases discussed in the article comprised a relatively insignificant
sample (.04%) from which to conclude that the office routinely engaged in unethical practices to win
convictions. Moore admitted he had performed no statistical analysis but had focused instead on the
problem cases he had discovered. The Supreme Court determined that "the fact that Moore had not
reviewed every indictment during D.A. Skeen's service or discussed a larger number of problem
cases is not evidence that he knew the article contained false statements." Id. at 637. Nor was the
court persuaded that the plaintiffs had raised a fact issue despite claims that "Hearst and Moore
purposefully avoided the truth, relied on dubious information from bias [sic] sources, deviated from
professional standards of care, and were motivated to fabricate." Id., citing Bentley, 94 S.W.3d at
596. Moreover, "[t]he mere fact that a defamation defendant knows that a public figure has denied
harmful allegations or offered an alternative explanation of events is not evidence that the defendant
doubted the allegations." Id., citing Huckabee, 19 S.W.3d at 427.

 Because we conclude El Diario has not raised a genuine issue of material fact that Belo acted
with actual malice, we sustain the sole issue for review. Accordingly, we reverse and render
judgment in Belo's favor.


September 20, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.
1. Rodríguez testified on deposition: "They -- that they have not been serial killings at all. They have been just
domestic problems. Remember in -- that in maquila, in Juarez, brought thousands of women to work. In Mexico, we
macho men don't like our women to work. But the necessity makes you acknowledge it. So, I think that a lot of the
killings have been just killings between husband and wife, between people that hate each other, and for reasons have been
covered up as serial killings."
2. In its first amended petition, El Diario alleged Belo's defamatory publication constituted defamation per se
and defamation per quod. 
3. El Diario ultimately non-suited its claim for business disparagement. 
4. We have jurisdiction via interlocutory appeal because the trial court denied Belo's motion for summary
judgment that was "based in whole or in part upon a claim against or defense by a member of the electronic or print
media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print
media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or
Article I, Section 8, of the Texas Constitution, or Chapter 73." See Tex.Civ.Prac.&Rem.Code Ann. § 51.014 (a)(6). 
5. We need not decide whether the article was actually false to resolve this appeal. The plaintiffs can prevail
here only if there is some evidence that Belo published the article with actual malice.

6. Rodríguez testified in his deposition that the statement was true. He also said that he strongly objected to the
notion that any government official or anyone else controlled his newspaper, that he did not believe he was in Governor
Martinez's, the mayor's, or any other government official's pocket, and that he did not have any complaint regarding
this paragraph of the story.