**AFFIRMED and Opinion Filed February 13, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-19-00285-CV
_____

**JOHN TIEGEN, Appellant**
**V.**
**FREDERIC SLICE, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-15264**

# MEMORANDUM OPINION

Before Justices Whitehill, Schenck, and Evans
Opinion by Justice Whitehill

Appellant John Tiegen sued appellee Frederic[1] Slice for defamation and other torts. The trial court granted Slice's Texas Citizens Participation Act (TCPA) dismissal motion. Tiegen appeals.

The pivotal question is whether Tiegen adduced clear and specific evidence that Slice made the defamatory statements with actual malice, i.e., knowledge that the statements were false or reckless disregard regarding their truth. Concluding that Tiegen failed to carry his burden, we affirm.

---

[1] Documents in the clerk's record refer to appellee variously as Fred, Frederic, and Frederick Slice. We use Frederic because that is how the notice of appeal refers to him.

# I. BACKGROUND

## A.  Factual Allegations

Tiegen's live pleading alleged these facts.

Tiegen is a former United State Marine.  In September 2012, Tiegen was working for the Central Intelligence Agency as an annex security team member in Benghazi, Libya.  On the night of September 11, 2012, there was a terrorist attack on the United States consulate in Benghazi. Tiegen participated in the efforts to defend the consulate and the CIA annex.  The events in Benghazi resulted in numerous government and private investigations, as well as a book and movie.

After the events in Benghazi, Tiegen became a public speaker and a brand ambassador for various manufacturers.

In September 2018, Tiegen discovered that Slice had created a Twitter handle with a profile picture that featured Tiegen's face and the words "Liar of Benghazi."  Slice also posted defamatory statements about Tiegen elsewhere on the internet.  Tiegen attached several of these posts to his petition.  A representative post says, "I'll never forget that John Tiegen is one [of] the 'Liars of Benghazi', who lied that the Chief of Base ordered the rescue team not to go help the Americans under attack at the diplomatic mission."

## B.  Procedural History

Tiegen sued Slice for statutory libel per se, common law libel per se, tortious interference with prospective contractual relations, and intentional infliction of emotional distress.

Slice answered and filed a TCPA motion to dismiss the suit.

Tiegen responded, and Slice replied.

After a hearing, the trial court granted Slice's motion, dismissed the lawsuit, and awarded Slice attorney's fees and expenses.  Tiegen appealed.

## II. ISSUE PRESENTED

Tiegen's sole issue asserts that the trial court erred by granting Slice's motion to dismiss.

Although Tiegen's issue is broad enough to permit argument as to all four of his claims, his appellate brief addresses only defamation. Accordingly, any error as to his tortious interference and emotional distress claims is not before us. *See Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam).

## III. ANALYSIS

### A. Applicable Law

#### 1. The TCPA

The TCPA authorizes defendants to use a dismissal motion procedure in civil cases involving certain specified rights. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003–.005.[2] This procedure involves up to three steps.

At step one, the movant bears the burden to prove by a preponderance of the evidence that the legal action against him is based on, relates to, or is in response to his exercise of the right of free speech, association, or petition. *See id*. § 27.005(b).

If the movant carries his step one burden, the analysis proceeds to step two. At step two, the nonmovant bears the burden to establish by clear and specific evidence a prima facie case for each essential element of his claim. *Id*. § 27.005(c). If he fails to carry this burden, the trial court must dismiss his claim. *Id*. § 27.005(b)–(c).

At step two, the clear and specific evidence requirement requires more than mere notice pleading. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam). The nonmovant must provide enough detail to show his claim's factual basis. *Id*. However, the TCPA "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." *In re*

---

[2] All TCPA references in this opinion are to the statute as it existed before certain amendments went into effect on September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. The amendments do not apply to this case.

*Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (orig. proceeding). We consider both the pleadings and any supporting and opposing affidavits. *Id*. (citing CIV. PRAC. & REM. CODE § 27.006(a)). We consider only the pleadings and evidence favoring the nonmovant when determining whether he established the required prima facie proof. *Apple Tree Café Touring, Inc. v. Levatino*, No. 05-16-01380-CV, 2017 WL 3304641, at *2 (Tex. App.—Dallas Aug. 3, 2017, pet. denied) (mem. op.).

If the nonmovant carries his step two burden but the movant has asserted a defense, the analysis moves to step three. At step three, the movant must establish by a preponderance of the evidence each essential element of a valid defense to be entitled to dismissal. CIV. PRAC. & REM. CODE § 27.005(d).

A successful movant is entitled to recover attorney's fees, expenses, and sanctions. *Id*. § 27.009(a).

We review the trial court's ruling on a TCPA dismissal motion de novo. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

**2. Defamation's Elements**

Tiegen's claims at issue here are for statutory and common law libel. Libel is a subset of defamation. *See Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013) ("The tort of defamation includes libel and slander."). Libel means defamation in writing, while slander means spoken defamation. *Id*.

"Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d at 593.

The elements of statutory libel and common law libel are the same. *See Humane Soc'y of Dallas v. Dallas Morning News, L.P.*, 180 S.W.3d 921, 923 (Tex. App.—Dallas 2005, no pet.)

(proof required to establish statutory libel is same as proof necessary to establish common law libel).

If the claimant is a public figure, which Tiegen concedes he is for purposes of this case, the requisite degree of fault is actual malice. *See Hearst Corp. v. Skeen*, 159 S.W.3d 633, 636–37 (Tex. 2005) (per curiam).

In this context, actual malice means either knowledge that a statement is false or reckless disregard for the truth. *Id.* at 637. Reckless disregard is a subjective standard, requiring evidence that the defendant in fact entertained serious doubts about his statement's truth or had a high degree of awareness that his statement was probably false. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003); *see also Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002). *Bentley* fleshes out the reckless disregard standard with these rules:

- Mere negligence is not enough to show reckless disregard. 94 S.W.3d at 591.

- "[T]he mere failure to investigate the facts, by itself, is no evidence of actual malice." *Id.* at 595. Neither is failing to investigate the facts as a reasonable prudent person would do. *Id.* at 591.

- Evidence that the defendant failed to investigate contrary to his usual practice and motivated by a desire to avoid the truth may be some evidence of reckless disregard. *Id.*

- "[A] purposeful avoidance of the truth is" evidence of actual malice. *Id.* at 596.

- "A lack of care or an injurious motive in making a statement is not alone proof of actual malice, but care and motive are factors to be considered." *Id.*

- "An understandable misinterpretation of ambiguous facts does not show actual malice, but inherently improbable assertions and statements made on information that is obviously dubious may show actual malice." *Id.*

Moreover, we have said that recklessness may be found if there are obvious reasons to doubt the informant's veracity or the accuracy of his reports. *Campbell v. Clark*, 471 S.W.3d 615, 629 (Tex. App.—Dallas 2015, no pet.).

"The actual malice inquiry focuses on the defendant's state of mind at the time of publication." *Forbes Inc.*, 124 S.W.3d at 173.

**B.      Step Two: Did Tiegen produce clear and specific evidence of actual malice?**

No.  Tiegen did not produce clear and specific evidence raising an inference that Slice (i) knew his statements were false or (ii) entertained serious doubts that his statements were true or had a high degree of awareness that his statements were probably false.

Tiegen does not dispute that Slice carried his TCPA step one burden.  Rather, he argues that he produced clear and specific evidence of each element of his defamation claims.  For purposes of this opinion, we assume that Tiegen has shown that Slice's statements about Tiegen are false, are defamatory, and caused Tiegen damages.  Consequently, we focus our analysis solely on the actual malice element.  *See In re Lipsky*, 460 S.W.3d at 593 (defamation elements).

**1.      Tiegen's Pleadings and Evidence**

Tiegen's pleadings and evidence support the premise that Slice made the following statements:

- Tiegen is a liar.

- Tiegen lied to Congress.

- Tiegen lied under oath, i.e., committed perjury.

Although many of the statements are general statements that Tiegen is a liar, some specify that Tiegen lied—and lied to Congress—by saying that the chief of base at the CIA annex told Tiegen and others to "stand down" while the consulate was under attack.

Additionally, Tiegen's evidence includes one internet post in which Slice asserts that he conducted the following investigation before concluding that Tiegen lied when he said that the chief of base told anyone to stand down: (i) he read all congressional reports about the Benghazi attack, (ii) he read the book and watched the movie *13 Hours*, (iii) he watched dozens of videos in which Tiegen and others told "their story about being told to stand down," and (iv) he spent

hundreds of hours over about six years reading everything he could find on the internet "about the allegation that the Chief of Base in Benghazi stoo[d] down the Annex GRS team."

## 2. Tiegen adduced no clear and specific evidence of actual malice.

First, we note that Tiegen's pleading contains assertions that Slice posted his comments "with malice" and that he "knew the statements were false and acted with reckless disregard for the truth." But he gives no facts to support these conclusions, so his pleading provides no clear and specific evidence of actual malice. *See Dobrott v. Jevin, Inc.*, No. 05-17-01472-CV, 2018 WL 6273411, at *6 (Tex. App.—Dallas Nov. 30, 2018, no pet.) (mem. op.) ("Conclusory statements are not probative and will not establish a prima facie case.").

Tiegen's affidavit attached to his petition similarly refers to the "untrue and malicious nature" of Slice's statements, but this reference is also conclusory.

As to actual knowledge, Tiegen's brief doesn't argue that he produced any evidence that Slice knew his statements about Tiegen were false. Moreover, at oral argument, Tiegen's counsel all but conceded that Slice believed his statements were true.[3] Thus, we need not consider actual malice's knowledge prong and may proceed directly to reckless disregard.

As to reckless disregard, Tiegen argues principally that he met his burden with evidence that he was never criminally charged with perjury or any other crime relating to Benghazi. For example, Tiegen filed his own affidavit in which he said, "I was never called a liar or charged with perjury" after testifying before Congress. He also filed an affidavit by Sarah Adams, a former senior advisor to the United States House Select Committee on Benghazi. Adams said that no witnesses interviewed by the committee were charged with perjury. And Tiegen cites an internet

---

[3] Question: "Do you think Slice believes it's true that [Tiegen] lied to Congress?" Answer: "I believe that, that Mr. Slice believes what he thinks himself to be correct, yes." (Oral Argument beginning at 12:51.)

post in which Slice said that "Tiegen should be indicted for lying to Congress," as evidence that Slice knew Tiegen had never been charged with a crime.

But Tiegen's evidence that he was never charged with or convicted of perjury doesn't show any of the typical hallmarks of reckless disregard—it doesn't show that Slice (i) failed to investigate contrary to Slice's usual practice because he wanted to avoid the truth, (ii) made inherently improbable assertions and statements based on information that was obviously dubious, or (iii) had obvious reasons to doubt the veracity or accuracy of the information he relied on. *See Bentley*, 94 S.W.3d at 591, 596; *Campbell*, 471 S.W.3d at 629.

Indeed, Tiegen's evidence doesn't address Slice's actual statements at all. There's no evidence that Slice ever said that Tiegen had been charged with or convicted of perjury. There's only evidence (including Tiegen's pleading) that Slice said that Tiegen *actually* lied under oath, which is a different assertion. In any event, evidence that Tiegen was never charged with or convicted of perjury doesn't raise an inference that Slice (i) seriously doubted his statement that Tiegen *in fact* lied under oath or (ii) had a high degree of awareness that his statement was probably false. *See Forbes Inc.*, 124 S.W.3d at 171; *Bentley*, 94 S.W.3d at 591.

Tiegen also relies on his evidence that Slice posted some defamatory statements about Tiegen on websites for organizations that pay Tiegen for his sponsorship. This evidence arguably raises an inference that Slice intended to harm Tiegen by damaging his professional relationships. But an injurious motive, without more, is no evidence of actual malice for defamation purposes. *Bentley*, 94 S.W.3d at 596.

Tiegen relies on *Bentley* and *Campbell*, but they don't support his position. In *Bentley*, the defendant was sued for repeatedly claiming that a judge was corrupt, and the supreme court upheld an actual malice jury finding against him. But in that case there was evidence that "he expressed doubt to a friend that there was any basis for the charges he was making, and that he deliberately

–8–

ignored people who could have answered all of his questions." *Id*. at 602. Tiegen produced no evidence that Slice did anything similar.

In *Campbell*, the defendants accused a county commissioner of using his influence to help someone repeatedly accused of child abuse, and the commissioner sued the defendants for defamation. 471 S.W.3d at 618–22. In reviewing the denial of the defendants' TCPA dismissal motion, we held that there was sufficient evidence of actual malice because the defendants relied on only a single source, did no investigation to confirm their statements, and made numerous statements in their defamatory publications that were not quotes from or otherwise derived from their single source. *Id*. at 632. Again, Tiegen produced no evidence of similar facts. Indeed, the only evidence about Slice's investigation that Tiegen produced showed that Slice reached his conclusions after a lengthy investigation into numerous sources, including the congressional record. Even if we disregard this evidence because it doesn't favor Tiegen's position, *see Apple Tree Café Touring*, 2017 WL 3304641, at *2,[4] Tiegen still lacks clear and specific evidence that Slice made his statement with reckless disregard for the truth.

## C. Conclusion

Because Tiegen did not produce clear and specific evidence of actual malice, we overrule his sole appellate issue.

---

[4] It is not clear that we should apply the *Apple Tree Café Touring* evidentiary prism to the actual malice element. In another TCPA case, we appeared to review all the evidence regarding actual malice, both pro and con, in concluding that the nonmovant failed to carry his second step burden on actual malice. *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 776–77 (Tex. App.—Dallas 2018, pet. denied). But we need not address the question here because Tiegen failed to carry his burden even under the more favorable *Apple Tree Café Touring* approach.

## IV. DISPOSITION

We affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

190285F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN TIEGEN, Appellant

No. 05-19-00285-CV     V.

FREDERIC SLICE, Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-15264.
Opinion delivered by Justice Whitehill.
Justices Schenck and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Frederic Slice recover his costs of this appeal from appellant John Tiegen.

Judgment entered February 13, 2020.